Please all rise. I can hear you, I can hear you, I can hear you. This is the Honorable Kevin Porter. The Second Judicial District is now in court in pursuit of his adjournment. The Honorable Susan Hutchinson presiding. Please be seated. The Honorable Susan Hutchinson is on 2-F-1-2-0-4-2-0 in the state of Illinois and is acting in line to help Buckley defend his appellant. I'm going to go on behalf of the defendant's appellant, Mr. Terry Getsch. Our next appellant coming to battle me is Sally Getsch. Good morning. Mr. Getsch, whenever you're ready. Good morning, Your Honors. My name is Terry Getsch and I represent Martel Buckley, the appellant in this case. Mr. Buckley was wrongly convicted of first-degree murder after a trial in which the prosecution admitted it was all about the physical evidence, not about the testimony. That physical evidence is primarily a videotape, a very grainy videotape in which no guns are ever visible. This is sort of a unique case in which this court... When you say guns are not visible, I've seen the video, there are a couple of scenes where there appears to be an object in the hands of a couple of the individuals at about the same time as the shooting. Would you agree? I honestly couldn't say that there was an object. There are people with arms extended. I guess that's the most that I can see. I mean, obviously, somebody was shooting so there were guns there. And there were three different calibers of ammunition found in three different groupings, correct? Correct. Some of the groupings were tighter than others, but we don't know how many guns were used. We don't know... There also could have been revolvers involved which wouldn't have discharged cartridges. So what it boils down to is the video doesn't show A. who was shooting or B. the association with Mr. Buckley. And that's the primary problem with the State's case in this instance. They're relying on this video but they can't answer those two questions. Who shot Martel Buckley? Or who shot Dwayne Buchanan? And what is their association with Martel Buckley? When the defendant arrives, he arrives in one vehicle but leaves in a different vehicle, correct? Correct. And those are the same vehicles that are occupied by the other individuals who are assembled outside the gas station, correct? Well, that's not necessarily true because there's a third vehicle and it's not clear what that is. So that vehicle arrives... So there's a car parked at the pump then a green and white van arrives a minute or two into the tape and then another van arrives somewhere about four minutes in. Everyone's mingling about but it's not clear what the association between any of the people in those vehicles are let alone whether they were planning a criminal conspiracy. Well, what about the testimony from the eyewitnesses who supplemented the video particularly Mr. Glover, the 15-year-old, and Mr. Saunders? Well, if you look at Glover's testimony and then watch the video, it's pretty clear that Glover really didn't have any idea what was going on. He initially told the officer at his school, who interviewed him the day after, that he saw men in black hoodies get out of a van and start firing. It's pretty clear nobody has a black hoodie on anywhere on that tape. People are loitering for at least 10 minutes before anything happens. So Glover's testimony is pretty much refuted completely by the video. Well, whose obligation is it to determine the credibility of Glover's testimony? This court or the jury? Well, this court is in the perfect position to because you can watch the video. The video is as admitted by the prosecution at trial. Glover's testimony was that four or five men were arguing with a man standing at the front of the black car and he knew the man's name. He knew it to be Dwayne or quote-unquote Dickhead is his nickname. Correct. If you watch the video, there is clearly no argument. Admittedly, Martel Huxley sucker punches William Buchanan the second he walks out of the store. There was zero arguing. I mean, obviously we don't have any audio. After he punches him, another individual gets involved in the fray, correct? One of the people who was standing there waiting outside the gas station. It's not clear exactly what that person does. Whether they are engaged in the fight, whether they're trying to break up the fight, or whether they're shooting. We have no idea. And that's the problem. You have to have some evidence that that person, A, was acting in concert with Mr. Buckley and B, Mr. Buckley was aware of that person's potential involvement. We just don't have that. The video isn't sufficient to show that. There's a man with a red shirt that appears to get out of the dark van, correct? Right. And then is seen throwing his hand toward the victim while this fray is, you know, while this fight is going on. And then he leaves in the green and silver, green and white van, correct? I don't know that that's clear. Well, he runs up first to the stratus, looks inside, and then gets into the side door of the passenger side of that van, and then leaves in that van. You're talking about the dark car that the victim arrived in that his friends in the passenger side ran out of. Well, it still doesn't show an association between that van and this defendant. Well, wait. I mean, this defendant arrives in the green and silver van and the man in the red shirt leaves in the green and silver van. You're saying that's not an association? Well, it could be an association, but it doesn't show accountability. It doesn't show that Mr. Buckley had any idea what that person was doing. But it's not a reasonable inference? And again, we're talking about the common design here. We're not talking about whether the defendant knew that this guy had a gun and was going to shoot him, but whether there was a plan to harm the victim. Correct? Well, I mean, I don't think there's any evidence that there was a plan. I mean, the state... The defendant admitted that he wanted to attack the man. He wanted to attack the victim. Right. When he saw him arrive at the station, the state implies that they're waiting for knowing that Buchanan was going to arrive. I don't think there's any evidence of that. I think this was just a random encounter between two people that had a beef. And it just coincidentally, all these other men are just hanging out outside the gas station for several minutes and conversing with the defendant at various times. I don't think it's that unusual that people hang out at gas stations. I mean, I remember doing so as a child. You know, 16, 18-year-old kids do that quite often. I mean, if you watch, there's people buying sodas. There's people going in and out and talking. And the idea that this is some sort of ambush, but they knew that Dwayne Buchanan was going to arrive and that this would be the perfect setup for Martel Buckley. And the idea that Martel Buckley would then initiate a close quarter fist fight when this was an ambush to kill Dwayne Buchanan? I mean, Buckley was just as much at risk of being shot as anyone. You know, your argument is very, you know, it's a good argument, but the jury in the Connell Standard of Review is your obstacle here. The jury could have inferred from all the evidence, the video collected together with the testimony of the witnesses, that the defendant planned to attack the victim, and these other men knew about it and were there with him, regardless of whether or not he knew they were armed with firearms. If there's a reasonable inference could be drawn. See, I don't think it's a reasonable inference. I think we're speculating about everything in this instance because we don't know the identity of any of those other people. The two cases that you cited, Garrett, is different. The victim's found dead inside of a store, and it's never connected to the robbery or to the attempt at robbery. But in that instance, we know that two of the defendants that went into the store were armed. I mean, we don't even know who was armed in this instance. And what was their association? And Garrett, he was the getaway driver. And so his association was clear. In this instance, we have no idea who these people are. But in Garrett, there was no connection to the robbery. The victim was not connected to the robbery. The person who was found shot was not connected to any robbery. Correct? There was no robbery of the store. Well, it was an attempted robbery of the store with two people who were known to be armed that the defendant drove from the scene and drove to the scene and then drove, you know, was the getaway driver. And the other case that you cite, Coward, involves, you know, a shooting during a melee involving hundreds of people. Right. And, I mean, it's really not that much different than what occurred here. You know, a criminal act occurred. The defendant did something criminal. I mean, there's no doubt that Mr. Buckley did something criminal. He assaulted Dwayne Buchanan. And then he fled Mr. Buchanan as Mr. Buchanan is laying on the ground, shot. Pretty much everyone fled. I mean, Buchanan's passenger fled. Can the jury infer from the defendant's conduct before, during, and after the offense that he was involved in the plan? I don't think they can infer there was a plan. I mean, there just isn't any evidence of a plan. All right. I have a question about this common design. And you said that I was not part of the going to the gas station on a regular basis because I can't remember how far away it was from my house to walk to, so I probably wouldn't have done it. But, assuming that your information is correct and they hang out at these places, do they have reason to believe he was going to show up if he's one of the guys in the neighborhood who shows up? I mean, can't we assume that based upon I mean, there isn't any evidence. All right. Well, when a common design occurs, this is hypothetical, must it be a plan for that particular day and time? Or could it have been a plan that hatched in the event we see this person because I really hate this guy and I want to take him on? Does the common design have to relate to that particular day at that particular time? No, but there has to be a known common design. What's the common design here? Mr. Buckley said he admitted he did it and he called Compton and sucker punched him, I think, as you said. This is not something and they hadn't spoken. Now, there's some issue some people said they had spoken in the store, but that really doesn't seem to be an issue. So, why can't there be some inference that that punch started the process that they had talked about? Because there's nothing else that happened. I think the problem is we need evidence that they were working in concert. We're speculating entirely because we don't know who those other people were. Well, he knew who they were because he arrives with at least some of them and leaves with some of them, correct? So, if everyone at a party is mingling together... Let me finish my question. Sorry. Isn't it a reasonable inference that the jury could draw that from the defendant's activities he knew the other people who were at the station, these other men that are depicted in the video, because he arrives with them, leaves with them, arrives in one car, and leaves in another. Isn't that a reasonable inference that he knew who they were? Absolutely. It's reasonable to say that he knew who those people were, but it's not reasonable to then automatically assume that they were part of a criminal conspiracy. That they agreed to shoot this man or assault this man. I mean, it's a one-on-one fight, obviously, at the beginning. Another person approaches and then shooting breaks out. It's a five-second fight. You know, it's obviously reasonable to assume that most of those people probably knew each other. They all knew Dwayne Buchanan. That doesn't mean that they were working in concert with Dwayne Buchanan or DeMario Brown, the passenger they could sell. So, you know, knowing a person is entirely different than conspiring to commit a criminal act with them. And, obviously, you can infer that these people knew each other. They were mingling even if they had just met that day. They could have been friends. If the defendant was surprised or alarmed by the shooting, he had no foreknowledge of the shooting, why would he get in the car and leave with the men who were involved in the shooting? Well, he doesn't. He gets in the black car with the state argues it's the sister of some of the men. So, he doesn't even leave with whoever the apparent shooters are. He leaves with a separate person. And, again, the state makes this out as though, oh, that's the getaway car that was playing. Well, he puts his drink in the van before he starts to fight. So, if he knew he was going to leave in that black car, why didn't he put his drink in there? And, if he knew the shooting was about to occur, I mean, his reaction is totally counter to that. He runs in front of the building, like, clearly trying to get away, and then comes back, probably because he needs to get away in one of those cars he's going to get away in. I mean, it's just chaos. The state is completely speculating about what's going on. And, yes, you can infer certain things, but you can't  reasonably, to sustain the conviction. In the video, is it the defendant who, toward the end of the video, runs in front of the Stratus and then around the pumps? Yes. Okay. So, and then, at some point in time, you do see his arm extended out toward the victim, do you not? Correct. So, you have the defendant, you say he's running around like he's, oh my gosh, what's going on? But, he first runs away from the victim, then he runs toward the victim, around the victim, extends his arm toward the victim, and then around the pumps, and then into a car, correct? Correct. And we have a witness, Bailey, who said in her statement that the person who ran around in front of the car shot at the victim. She admitted at trial that she never saw a gun or heard a shot. But didn't she She was inferring. She wrote a statement that was admitted as substantive evidence, was it not? Yes. And in that statement that was admitted as substantive evidence, she has the person running around in front of the car, the only person that could be as a defendant, shooting at the victim. Which the jury clearly disbelieved. They found that the defendant did not fire a weapon. So, they obviously took her testimony at trial and disregarded her earlier statement. Well, do you know that they found that, or they found that he may have shot at the victim, we don't know if that was one of the shots that hit the victim. No, it wasn't charged as he personally discharged the kill shot. It was charged as he personally discharged the weapon at all. So, I mean, the jury finds that Martel Buckley did not fire a gun. So we know that the jury found they did not believe that he shot at any time during this entire melee. Well, can you explain to me why he runs toward the scene as opposed to away from the scene? Well, he runs away from the scene and then he runs back. And his arm being extended could just be a matter of momentum. Well, forget about his arm being extended. Why? Because you're saying that he didn't shoot. So, why is he running away and then he runs back to where all this happened if he's totally freaked out by what happened? It's chaos. I mean, what would you do if a shooting breaks out? Well, if I'm leaving in the black car and I'm running toward the black car, I get in the black car and leave. I wouldn't run away from the black car, around the Stratus, look at the victim, around the pumps, around the green van, and then farther up past the green van into the black car and then leave. I don't think I'd do that if I was trying to get away as quickly as possible. I don't know what I would do, honestly. And I think that's the problem. We're speculating about everything in this. Why did he do that? Why didn't the shooting start? Who shot at who? We don't know anything. And it really boils down to speculation and assumptions versus reasonable inferences, correct? Correct. And I think what we're doing, what the state is doing, is going beyond reasonable inferences into pure speculation. I know that my time is up. Did you want to address at all the jury instruction issue? I'd like to say that I think that's why the jury convicted. They got this proximate cause instruction that defines the term proximate cause but not in the way that it should be defined for felony murder. They did receive the correct instruction, but they received another instruction which omits the foreseeability language which is the root of knowing murder. But can we even consider that argument because the sentence was entered only on count two knowing murder and not fully tied to murder? Honestly, that proximate cause instruction could arguably, they could have applied it to any of them because it wasn't laid out what they meant by proximate cause. And each of the murder instructions say cause the murder. And so the jury could have used it even for the knowing murder charge for accountability. I mean, it could have caused confusion for any of the three. And murder is murder. I mean, the state argues, well, there wasn't a sentence imposed on those other two counts. Well, that's because there's only one count of murder, I mean, one charge of murder. It can be committed in different ways, but murder is murder. So the sentence applies to all three. And so with that... You'll have an opportunity for response or rebuttal. Good morning, Your Honor. Ms. Castle. Ms. Swiss, what is the difference between inferences, reasonable inferences and speculation in this forum? Well, what we have are a huge amount of facts, really, which show when taken together a very reasonable inference that these people were working in concert here, that they were working together. But it has to be pieced together. It's not just one instance. It's not just that they arrived here all at the same time, miraculously. Maybe that could be just that they come here often. But it's the fact that they got there and the black car was there for about ten minutes. Way past the time that everybody uses to fill up. But not just that. It wouldn't even move from the pump. When the white car comes behind it and tries to get it to move from the pump, it's right next to the green and white van. And of course we know it later becomes the getaway car. And that person in the black car, who is the sister of the two people in the green and white car, or van, excuse me, with the defendant, will not move that car away. It's clear that that association is not only close, but that's one indication, just one indication, of the fact that there's something going on here, that there's some thought that something may be going to happen. Now maybe they didn't know 100% that he was coming. But you take all the instances and all these circumstances together, the waiting, and the extra waiting. I mean, again, the green and white van wouldn't move away from the pump, so Saunders has to move his car to go get it filled up at a different pump. All of them are going back and forth between cars, visiting. They're not acquainted with each other. That's very clear. And I think, I won't get into that unless your audience has questions, but all three of those vans, or excuse me, vehicles, have people in them that all know each other. Then you can see from when the victim arrives, everything kind of goes into action. The person, one of the people from the burgundy van, the reddish van, has a white shirt on, and that's the person that Saunders later sees as, you know, as he hears the shooting, then he sees this man run from behind, come in front of his van, get in, and I mean, you can see on the video that he gets into the burgundy van, but he has a gun in his hand. There's a shooting. This man has a gun in his hand and he's running back as soon as the shooting finishes. That's a reasonable inference that he is one of the shooters, and in fact, I believe that the defense even conceived that, basically. Also, as the defense pointed out in their brief, that there was a lot of interaction between those people in the burgundy vehicle and the getaway car. They, you know, one of those men, the one with the white shirt, was standing there pretty much the whole time. The defendant goes over, stands next to him for some of that time. They all know each other. They get there. They wait. Then the man in the red shirt, who is also from the burgundy van, as soon as the victim comes, immediately comes forward towards where the victim and his car are parked, and he suddenly is, you know, involved in standing next to the green and white van near the victim, and then he becomes at least one of the shooters, because you can see as the defendant sucker punches, there's the man in the white shirt in front of the man who has started out before the sucker punch is delivered. He has started out towards him in anticipation, and that leads to a reasonable inference that he knows it's about to go down. And he runs toward him, gets there in about a second and a half, because he gets about a second, you know, run up before anything happens, and he's there immediately then to struggle with him, too, as they're holding him, and that, in fact, then is a spontaneous act that may have occurred. Maybe the defendant didn't know that these people were going to pull guns, but it doesn't matter, because at that point he's part of this. He's delivered the punch, which starts it. They then come up, and this man in the red shirt holds out his arm. His arm is extended in a shooting position. He gets close right to the person in the middle, who's the victim. It looks like he delivers a shot. Yes, you cannot see the discharge, that's for sure, but you can see that there's something in his hand that he's holding out with his arm straight for, and then immediately he runs back to exit at that point, and then he runs back and forth between the two, looking like he's also shooting, but, and that's where all, of course, the ballistics evidence is very important, too. That's where all the discharge of, you know, a particular type of ammunition is found. And, in fact, the defendant in his opening brief said that the shooter with the white shirt that went back to the Burmese man, that, you know, he admits that there is a discharge of one particular type of bullet that goes all along this pathway. We don't see anyone else running there, so I think we know who the shooters are, at least a couple of them. We don't know everyone, we don't know who delivered the kill shot, but he was shot three times, and it clearly is what caused his death. Well, let's say there's a reasonable inference that all these folks knew each other, and there's a reasonable inference that some of the people who knew each other did some shooting that ended up killing the victim. Let's say that's all a reasonable inference. But where's the reasonable inference that the defendant knew these people were going to jump into his fight? I mean, here's a guy that says, I had a problem with this guy before, I saw him at the gas station, and I was going to beat him up because we had words before at a party, I'm going to take him, I'm going to beat him up. Where's the evidence that he knew that this was a common design that he was going to, that these other people were going to jump in and help? I think for one thing, just the fact that they're all waiting there, you know, that they are all standing there. But then there's also acts during and after, and that would include the fact that the defendant does not distance himself from this at all. He does run away, but that's because there's a shopping fire with a man in between him, so immediately shots are ringing out everywhere. He runs to the south of the station, or the store rather, and when he does that, he basically gets himself out of the fray for a second. But then he immediately comes back, and whether or not the jurors believe this, obviously they didn't believe that he, that the state had proved beyond a reasonable doubt that he personally discharged his firearm But at the same time, you can see him run back and go directly to see what has happened to the victim. He's not running away from this scene. He's not distancing himself. He's going, and it looks like his arm is extended. You know, the juror may very well, jurors may very well have determined that he was armed. He didn't use it, maybe, or they don't have enough evidence to show that he used it. They may have been, you know, exercising leniency. It doesn't matter. We don't go beyond the verdict. We look to whether there are reasonable inferences, and here there are. He didn't distance himself. Afterwards, what does he do? And this shows a sort of, if you will, almost like a plan that arose between them, or certainly some type of indication that there might have been something going on here between all of them in terms of what will we do if this breaks out? Because the defendant runs right past the green van he's come in, and the black car, which has been waiting there all the time, just sort of inching away, is waiting at the edge of the property, and the black car is not leaving without him. Otherwise, why would he run past it and run to that car? He runs to that car, takes off. He doesn't report this to the police. He doesn't show up. That's also another circumstance that can be taken into account. And later, when he's questioned, he denies that, you know, he says, oh, we bumped into each other. He lies to the police. So all those circumstances taken together show that, you know, whether this was something that he really knew was going to happen in terms of a shooting, that's not necessary. You know, he can involve himself in the spontaneous acts of others, and that's what he did here. So we would suggest that all of those facts when you take it together do show a reasonable inference, not just speculation. This is like you have to look at the entire tape. You have to look at the ballistics evidence. You have to listen to, you know, those who testified. And then from all that, it's clear that these people were acting in concert. What about the argument that the proximate cause instruction confused the jury? Well, okay, first of all... And they may have, even though those counts were not before us, they may have bled over and confused the jury on common design and accountability. First of all, in terms of the issues instructions for the felony murders, there's not even the word cause used in those. So, you know, if you don't have proximate cause, if they're given a definition of proximate cause means this. And now they're faced with here are the issues you need to, the state needs to prove for you to find this person guilty. And there's no, not only no proximate cause that they can insert this into, there's not even a cause when it comes to the felony murder. It would be hard to determine that, in fact, I mean, this is a plain error, and that's the standard we have to hold the defendant's burden to. And it would be hard to say that, in fact, they must have inserted this somehow. It's almost like a non-sequitur in a discussion. You know, sometimes you say, well, where did that come from? But if you can't put it somewhere, it really doesn't have anything to do with the rest of the discussion. More than that, I would have to say that in terms of the mob action, you know, defendant and this other man, you know, acted together to struggle with this man and kind of, in a sense, hold and keep him there while these other people did things to him. In terms of that, in terms of the mob action being the predicate felony, then it would, that would not, I mean, proximate cause is defined as, let's see, any cause which in the natural or probable sequence produced the death of another person. Cause of death may not be the, it may not be the only cause, nor the last or nearest. It occurs with some other cause, but it must in combination cause the death. Well, the mob action, we know, you know, from the medical testimony, that it was not the punch that caused his death, it was the shots. So if they found him guilty on that, they would have found him not guilty had they tried to insert that in some way. I think that's an indication that they didn't use it. And I think that that, you know, that that means that they were, you know, not confused. Maybe they didn't know what to do with it, but I think it's certainly not a plain error. Do your honors have any other questions of me? What if the common, I mean, it seems a little unlikely when we have that much ballistics and casings around the parking lot, but what if the common design was simply to protect the defendant when he had his words, and he came with those people and they had weapons, he left with those, or at the same time, and they had weapons, is that, is their common design to protect him enough to have him found guilty of this murder? Well, in terms, yes, in terms of this being something which escalates, I mean, that's really what it is. It's certainly foreseeable and certainly, yeah, that their actions when they're acting and he's not disavowing their actions in any way, distancing himself, then they become his actions too. Well, I once had a judge tell me after a preliminary hearing, which isn't done much anymore, and he said, Mrs. State's Attorney, I can't find him guilty for not being polite and walking away and calling the police. How is this different? Yeah, we have much more than that, though. It's not just that he didn't call the police, it's that he actually, after the shooting, went with his arm extended in a motion that certainly appears to be, you know, he's looking to shoot this person, you know, at the victim. He's still chasing that victim down, even after these other people jump in, do what they did. And it's not a protection when he's hitting him, even if he's getting the worst of it. The other person, you know, if you wanted to say that there could be some argument, yes, there's some argument, but on the other hand, is there a reasonable inference that he was coming to actually attack that person and help with this? Yes. But looking at it in terms of what you're saying, could that first person who showed up, you know, like a second later and, you know, struggled with him too, could he have been protective? Perhaps, but the other people were not protecting when fisticuffs became the guns and they turned that on him. In his initial statement to the police, the defendant says that he punched the victim because of something that happened in the store. That's correct. What can we infer from that? Well, there's a consciousness of guilt because he's lying. What can the jury infer from that? Well, he's lying and not lying. That he was trying to protect the people that they actually did the shooting? Would that be a reasonable inference? I think that is a reasonable inference, yes. Absolutely. Even though he later acknowledged that he had a preconceived plan to attack. He almost had to because they had the video and they were able to say, that's just incorrect and we know you're lying. But we could infer or the jury could have inferred from that initial lie that he was doing that to protect the shooters. Absolutely. The fact that he lied to the officers at that time shows that he was protecting all of them. You know, if he was not involved in that, he should have been coming forward and would have been coming forward and it's a consciousness of guilt that he instead, you know, tried to make it about something that it wasn't. Tried to make it something that was not criminal in nature. And for these reasons, we ask your honors to affirm the defendant's conviction. Mr. Katz? Just two points. First, I think each murder charge required that the defendant or one for whose actions he is legally responsible caused the death of Duane Peake. So, I think the state is mistaken in arguing that cause does not appear in these murder instructions. The word cause is in there. It doesn't say practical cause. But, I think that the jury could be confused on any of those murder counts based on Mr. Roney's practical instruction. The second point, I thought it was notable that the state argued that something it's reasonable to infer that something was going on here. Was that something? And who is that something? Who is involved in that something? We don't know. The state is, oh, something happened. We know something happened. But, we don't know any of the details. And reasonable doubt requires those details. We can't just say something was going on. Because that means anything. What about my question to counsel, to the state that from the defendant's initial lie to the police that the punch was precipitated by a bump in the store. Couldn't the jury infer from that that the defendant was trying to protect the actual people who shot the victim? I don't think so. Because he freely admits the punching. Once he's confronted with the fact that it's all captured on video. Well, no, but he admitted to punching him. He was explaining the punch. He had already admitted to punching. I'm talking about his motive for the punch. He later admitted that it was something that he had planned to do because of an argument at a party sometime in the past. I don't see how the reason for the punch excuses anything that happened after the punch. Well, the reason for the punch if it just happened just then that would not have permitted inference that there had been a plan. If it just happened today just now, then there would be no reason to infer that these men who shot the victim were there because the defendant intended to get the victim. Do you understand the difference? I understand it in hindsight. I don't think that Martel Buckley is sophisticated enough to think that far in advance during his statement. Was there testimony regarding his IQ or his ability to plan how to be interviewed by the police? No, but he admitted to the punch freely. He was discussing the reasoning for the punch. Clearly, I mean I think we're making too much of that. We're grasping astrology. We're looking for something. Some reason to say the state's proved its case and it hasn't. Well, that's an explanation for why the defendant lied to the police. Defendants lie to the police all the time. It doesn't mean that they're everything was on video. He admitted to punching. I was fighting with the guy when shots were fired. So the reason for the fight is sort of irrelevant. No, it's not. It's not irrelevant. The jury had that in front of them. The jury could infer whatever was reasonable from that statement together with all the other evidence. It's not irrelevant. Well, it's not irrelevant but I don't think it's a reasonable inference to say that again, I think it's got from reasonable inference to speculation. And your argument is that while all reasonable inferences can be made or should be made in reviewing the case, the jury made unreasonable inferences from the evidence. Well, I don't know that the jury made unreasonable inferences. I think they were confused by this proximate cause jury instruction that says if the fight concurred with the shooting without any connection of foreseeability, that you can convict. And I really think that that was the impetus for the jury. I mean, when the jury found that he didn't fire a gun, I think that's pretty compelling proof that the jury didn't think he was armed. But isn't that also an indication if we're talking about indications in inference, they said that they could not beyond a reasonable doubt say that extended arm as he walked or ran by the victim included a gun. It could, they could have recognized that he knew that those people were there to assist him in one way or the other. And therefore, Mr. Buchanan's dead and he started the fight. Isn't that a reasonable inference? I think that the State admits that these instructions were inerrant. And I think the evidence, I mean, is close enough that plain error obviously should apply. The direct and foreseeable consequence instruction relates to felony murder, correct? 7.15a. Yes. And you're saying that confused their verdict on count two, you think? No, I'm saying that for the proximate cause definition, the erroneous instruction, 7.15a was correct. Right, but you're saying they gave 4.24, which was erroneous. Yes. But you're saying the confusion arises because 7.15a talks about direct and foreseeable consequence. No, I'm saying the confusion arises because the proximate cause definition in 4.24 doesn't include direct and foreseeable consequence. And it's giving a definition of proximate cause, and the word cause appears in each murder instruction. But let's say for a minute we did not have felony murder in this case. Count two was the only count. Yes. Okay. Not giving 7.15a wouldn't be a problem. No. 4.24 wouldn't be the instruction. No, it would still be erroneous. It's erroneous under the committee comments. I understand that, but how would that confuse a jury on count two? Forget about felony murder for a minute. How would that confuse a jury on count two? Count two says the defendant or one for whose actions he's legally responsible has caused the death. And so the juror is looking at this, caused the death. They also have this instruction that says proximate cause means concurred with. Cause, cause. What are we using this instruction? Why did we get this instruction? Oh, it's defining cause. This says caused the death. This is, so they relate the two. So I think it absolutely could confuse someone on count two. Because caused the death, you're looking, oh, we have this definition of cause. Yes, it's called proximate cause. But, I mean, it's enough to confuse the jury. Absolutely. So we ask that Your Honors either reverse outright or grant Mr. Buckley a new trial. Thank you. Thank you. Thank you for your arguments this morning. We will take the matter under advisement. A decision will be issued accordingly and we will stand in recess to get our notes for our next case. Thank you.